IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| K'CEE KINARD ODOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 3:19-cv-832-ECM |
| | ) | (WO) |
| TOBIAS BOISVERT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Now pending before the Court is a motion for summary judgment filed by
Defendants Tobias Boisvert ("Boisvert"), Ray Smith ("Smith"), and the City of Phenix
City ("Phenix City") (collectively, "the Defendants"). (Doc. 51).  Pursuant to 42 U.S.C.
§ 1983, Plaintiff K'Cee Kinard Odom ("Odom") asserts claims against Boisvert, a Phenix
City police officer, for deprivation of his Fourth Amendment rights to be free from
unlawful seizure (Count I) and unlawful use of force (Count II).  He further brings claims
against Boisvert and Phenix City pursuant to state law for false imprisonment, false arrest,
and unlawful restraint of freedom (Count III); assault and battery (Count IV); and malicious
prosecution (Count V).  Finally, he brings claims against Smith—the Chief of the Phenix
City Police Department—and Phenix City for negligent hiring and retention (Count VI).
Boisvert contends that he is entitled to summary judgment on the § 1983 claims based on
qualified immunity and on the state-law claims based on statutory peace officer and state-

agent immunity.  Smith and Phenix City assert that summary judgment is warranted on the negligent hiring and retention claim because it fails as a matter of law.  Based on a thorough review of the record, the briefs, and the applicable law, for the reasons to be discussed, the Court concludes that the motion for summary judgment is due to be GRANTED with respect to the § 1983 excessive force claim.[1]  Furthermore, because the Court declines to exercise supplemental jurisdiction over the state-law claims in this case, the state-law claims will be DISMISSED without prejudice.

## II.  JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v.*

---

[1]  In his opposition to summary judgment, Odom fails to address the Defendants' motion for summary judgment on his federal unlawful seizure claim.  "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Rd. Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)).  Because Odom fails to address Count I, he has abandoned this claim.  Accordingly, the Defendants' motion for summary judgment is due to be GRANTED as it pertains to Odom's federal unlawful seizure claim.

2

*Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).  An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.*  The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the movant satisfies this burden, then the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FED. R. CIV. P. 56(c)(1)(A)–(B).  If the nonmovant fails to support his version of the facts or to properly address the movant's version of the facts as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  When parties offer competing versions of the facts, however, and the record "blatantly contradict[s]" the nonmovant's version, such "that no reasonable jury could believe it," the Court should not accept the nonmovant's version on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  And so, if an accurate video recording "obviously contradicts the nonmovant's version of the facts, [the Court] accept[s] the video's depiction

3

instead of the nonmovant's account." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (alterations adopted) (quoting *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)).  However, if the video evidence "fails to convey spoken words or tone" or "fails to provide an unobstructed view of the events," then it is "not obviously contradictory," and the nonmovant's version must be credited as to those obstructed moments of the video. *Gee*, 625 F.3d at 1315.

## IV.  FACTS[2]

Odom's claims arise from a police response to a family dispute at a restaurant that he owned and managed.  Boisvert and another Phenix City police officer, Darrell Johnson ("Johnson"), responded to a 911 call placed by Rhonda Kennedy ("Kennedy").  Johnson's body-camera recorded the events after the officers arrived at the scene.

In the early evening on September 12, 2019, Kennedy and Cathy Benton ("Benton"), Odom's aunts, created a disturbance at his restaurant.  Odom instructed Kennedy and Benton to leave his premises.  Doing so, Kennedy promptly called the police. At 7:43 p.m., Kennedy informed the Phenix City 911 dispatcher that her nephew, Odom, was "trying to fight the whole family.  He physically pushed [her] and hit [her]." (Doc. 53-1 at 00:30).  The dispatcher then sent Boisvert and Johnson to the restaurant, informing them that Kennedy called because her nephew was "attempting to fight." (Doc. 53-2 at 00:27).

---

[2]  The facts that follow are viewed in the light most favorable to Odom, drawing all reasonable inferences in his favor. *See Anderson*, 477 U.S. at 255.

Just after Kennedy called the police, Odom also called 911 because his fifty-four-year-old mother had passed out in the restaurant.  The dispatcher then advised Boisvert and Odom that a fifty-four-year-old woman had fallen at the restaurant because of a family dispute begun by Odom.

When they arrived at the scene, the officers first made contact with Kennedy in the restaurant's parking lot.  Kennedy informed the officers of her account of the family dispute.  Specifically, she told them that Odom began the altercation and might be on something due to his erratic behavior.  Kennedy stated that Odom swung at her, punched her, and pushed his mother over the counter.  As the officers proceeded toward the restaurant, an adolescent boy exited and told them that his grandmother was inside the restaurant on the floor.

When the officers entered the restaurant, Johnson turned on his flashlight because the lights were turned off and it was dark inside.  Benton and Kennedy followed the officers into the restaurant.  Benton then walked in front of the officers toward the rest of the family tending to Odom's mother on the floor.  When Odom saw his aunts, he yelled, "Hey, don't come in here.  Get the fuck outta here." (Doc. 53-4 at 03:37).  Odom's brother tried to restrain him, but Odom broke free of his brother's arms and began rushing toward Benton. As Odom stepped up into Benton's face, immediately after he broke free from his brother's grasp, Boisvert shot his taser into Odom's back and fired one round of electricity for five seconds.  Odom immediately fell over.

While Odom laid on the ground, saying, "I wasn't gonna do nothing," Johnson rolled Odom onto his stomach and put him in handcuffs. (Doc. 53-4 at 04:00).  Neither officer used further force on the then-detained and non-resisting Odom.  Minutes later, Johnson escorted Odom, who was standing up conversing, outside of the restaurant while police officers and emergency medical service ("EMS") providers arrived to stabilize the scene.  Odom, who was walking and conversing with emergency personnel for a little over twenty minutes, eventually began to complain about back pain.  The EMS then brought Odom to the hospital.  Odom has not provided evidence of injury beyond the pain caused by the taser prongs.

Over two years later, and over a year after the current lawsuit was filed, without Johnson's knowledge, Odom recorded a conversation they had about the altercation. Johnson explained to Odom that Boisvert had the reputation as a "hothead," and specifically that on the day of the incident in 2019, Boisvert failed to follow the Phenix City Police Department de-escalation policy when he tased Odom without giving him a warning.

## V.  DISCUSSION

### A.    Section 1983 Excessive Force Claim

Boisvert argues that summary judgment on Odom's excessive force claim is appropriate based on qualified immunity.  Qualified immunity is "an *immunity from suit*" that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). The defendant official bears the initial burden of showing he was "acting within his discretionary authority." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019) (citation omitted). The burden then shifts to the plaintiff to show (1) that the defendant "violated a constitutional right" and (2) that "this right was clearly established at the time of the alleged violation." *Patel v. Lanier County*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citation omitted).

### 1.   *Discretionary function*

In examining whether an official was performing a discretionary function, courts ask whether a government employee was (1) performing a legitimate job-related function (2) through means that were within his power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The focus is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Spencer v. Benison*, 5 F.4th 1222, 1231 (11th Cir. 2021) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

In this case, Odom does not dispute that Boisvert was performing a discretionary function; indeed, he disregards this step of the analysis altogether. The Court finds that Boisvert was acting within his discretionary authority at the relevant time.

### 2.   *Constitutional violation*

Once a government official establishes that he was performing a discretionary function, a plaintiff must satisfy a two-pronged inquiry to defeat a qualified immunity

defense. *See Shaw*, 884 F.3d at 1098 (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)).   The first prong asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Because Odom claims excessive force was used prior to and during his arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).   Such freedom "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (citation omitted).   While the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion . . . , whether the force is reasonable depends on a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 737–38 (citation omitted).

Reasonable force is judged from the perspective of a reasonable officer on the scene, taking into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Davis v. Waller*, 44 F.4th 1305, 1313 (11th Cir. 2022).   The Court weighs (1) "the severity of the crime at issue," (2) whether the plaintiff "pose[d] an immediate threat to the safety of the officers or others," and (3) "whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.   The

Court also considers (4) "the need for application of force," (5) "the relationship between the need and amount of force used," and (6) "the extent of the injury inflicted by the arresting officer." *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021).   The Court's reasonableness assessment "must be made at the time the force was used, 'rather than with the 20/20 vision of hindsight.'" *Davis*, 44 F.4th at 1313 (quoting *Graham*, 490 U.S. at 396).

Odom contends that when the officers entered the restaurant, he raised his voice to ask Kennedy and Benton to leave the premises, an act that he claims did not justify Boisvert's use of the taser.   Furthermore, according to Odom, the fact that Boisvert did not warn Odom before firing the taser—which violated Phenix City Police Department policy—makes the tasing unreasonable.[3]   However, "[t]he use of a taser is not categorically unconstitutional.   [The Eleventh Circuit has] found that the use of a taser can be appropriate in a wide array of situations." *Charles v. Johnson*, 18 F.4th 686, 701 (11th Cir. 2021) (citing *Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012); *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008); and *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004)).

Viewing the evidence in the light most favorable to Odom, unless contradicted by clear video evidence, the Court finds that Boisvert's use of the taser in this situation was reasonable.   First, moments before Boisvert entered the dark restaurant, Kennedy informed

---

[3] The Court notes that Odom merely recites the legal standard for an excessive use of force claim—omitting the first three *Graham* factors—without any analysis or application of the law to the facts of this Case.   The burden is on the parties to formulate arguments and present law in support of their position.   *See Rd. Sprinkler Fitters Local Union No. 669*, 10 F.3d at 1568.   Irrespective of Odom's lack of analysis, the Court's own analysis, discussed below, finds no evidentiary support for Odom's conclusion that "Boisvert is not entitled to qualified immunity." (Doc. 58 at 8).

him that Odom had physically assaulted her, was angry toward his aunts, and that an infirmed woman was on the floor. A reasonable officer in Boisvert's position would be on heightened alert to an aggressive suspect that could create a danger to himself and third parties.

Second, a reasonable officer in Boisvert's position would have perceived immediate danger to Benton when Odom aggressively rushed toward her yelling and cursing. As Benton approached the woman lying on the ground, body-camera video clearly depicts Odom yelling and cursing, breaking free of his brother's grasp, barreling through tables and chairs, and rushing towards Benton. Mere seconds passed between the time when Odom broke free of his brother's arms and when Boisvert fired his taser. After only one cycle of electricity, Boisvert stopped the charge to allow Johnson to detain Odom. These facts indicate that Boisvert used limited and reasonable force to subdue Odom almost immediately after he reasonably perceived Odom posed a threat to Benton's safety. *See Fils v. City of Aventura*, 647 F.3d 1272, 1290 (11th Cir. 2011) (holding an officer's use of force was reasonable because a plaintiff reasonably represented a danger to a third party when she took a step toward the third party, who "would likely not be able to defend himself in the event that [plaintiff] attacked").

This situation is not like one where the Eleventh Circuit usually finds the use of a taser to be unreasonable, such as when a plaintiff is "non-hostile and non-violent," *id.* at 1289, or when an officer tased a suspect multiple times in excess of what was necessary to subdue him, *see Oliver v. Fiorino*, 586 F.3d 898, 905–07 (11th Cir. 2009). Although Odom

10

offers his own explanation for rushing towards Benton, the reasonableness of Boisvert's use of force must be judged from Boisvert's perspective, not the Plaintiff's. *See Graham*, 490 U.S. at 396–97.

In *Fils*, a plaintiff sued an officer for excessive use of force when he threw her to the ground. 647 F.3d at 1290. The plaintiff had taken a step towards a third party who was unable to defend himself when the defendant officer stepped in to use force against the plaintiff. *Id.* The Eleventh Circuit held that "[a] reasonable officer could easily have seen [plaintiff's] step forward to [the third party's] back as representing a danger to [the third party]. [Plaintiff] was screaming, and clearly indicated that she was not happy with [the third party]." *Id.* Given the chaotic scene when the force occurred, the Circuit held the plaintiff posed a great danger to the third party and decided not "to second-guess [the defendant officer's] 'split-second judgment'" to use force. *Id.* at 1291 (quoting *Graham*, 490 U.S. at 397).

Odom appears to rest his entire excessive-force argument on the fact that Boisvert broke Phenix City Police Department policy by failing to give a warning before firing his taser. However, Odom fails to provide the Court with the policy Boisvert is alleged to have violated. In any event, even if the Court considers violation of city policies as a factor in its reasonableness analysis,[4] given the immediate threat that Boisvert perceived Odom

---

[4] The Court does not suggest that a violation of police policy clearly establishes a constitutional violation, but policy can indicate how a reasonable officer would behave in the situation. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 449 (5th Cir. 1998) ("[I]t may be difficult to conclude that the officers acted reasonably if they performed an action that had been banned by their department."); *see also Pettaway v. Barber*, 2023 WL 1422457, at *10 (M.D. Ala. Jan. 31, 2023).

posed to Benton, his split-second use of the taser to debilitate Odom was nonetheless reasonable.

In *Draper*, for example, the plaintiff argued that the officer's use of the taser was unnecessary because the plaintiff would have gladly complied with the officer's arrest request if he had verbally informed him of such. 369 F.3d at 1277. The court held that there was a reasonable need for the taser because the plaintiff was hostile and belligerent, and that "a verbal arrest command accompanied by attempted physical handcuffing, in these particular factual circumstances, may well have, or would likely have, escalated a tense and difficult situation into a serious physical struggle in which [the persons present] would be seriously hurt." *Id.* at 1278.

Similar to the situations in both *Fils* and *Draper*, the Court declines to second-guess Boisvert's split-second judgment to contain the reasonably perceived threat posed by Odom to those around him. Boisvert witnessed an unrestrained, hostile, and belligerent suspect—who had reportedly struck his aunt and pushed over his mother minutes before— break free of a restraint, yell and curse, and aggressively rush toward Benton. Boisvert immediately responded by firing his taser one time. Once Odom was restrained, no further force was used. Although he asserts that he was "in very bad pain," (doc. 59-1 at 2), Odom offers no other evidence regarding the extent to which he suffered injuries as a result of being tased. Under these circumstances, Boisvert did not need to warn Odom before using the taser in the rapidly evolving situation whereby Odom aggressively charged toward a third party.

12

Faced with similar facts, the Eleventh Circuit in *Draper* held:

> Although being struck by a taser gun is an unpleasant experience, the amount of force [defendant] used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force and did not inflict any serious injury.  Indeed, the police video shows that [plaintiff] was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him.  The single use of the taser gun may well have prevented a physical struggle and serious harm to [all persons present].

*Id.*  The totality of the circumstances of this case, therefore, demonstrates that Boisvert's single use of the taser did not constitute excessive force.

### 3.   *Clearly established right*

Even if Odom could demonstrate an underlying constitutional violation in Boisvert's use of the taser, he cannot demonstrate that it violated a clearly established right.  If a plaintiff can show an underlying constitutional violation occurred, then the second prong of his burden to overcome qualified immunity asks whether the violation of the federal right was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  When determining whether a violation is clearly established, the relevant question for the court is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  The unlawfulness of such conduct can be clearly established in three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly

13

violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).[5]

First, Odom does not identify a case with indistinguishable facts—a holding that it is unreasonable to tase an unrestrained and apparently aggressive suspect who is charging at a vulnerable third party. *See Fils*, 647 F.3d at 1290. Second, Odom does not maintain that Boisvert's conduct violated a constitutional right established from a broad statement of principle within the Constitution, statute, or case law.

Odom, instead, claims that Boisvert's conduct fell within the third manner of showing a clearly established right, by conduct so egregious that a federal right was clearly violated, even in the total absence of case law. A case falling within this third method is "rare" and "is reserved for 'extreme circumstances' presenting 'particularly egregious facts' that would have put any reasonable officer on notice that his actions 'offended the Constitution.'" *Baxter v. Roberts*, 54 F.4th 1241, 1268 (11th Cir. 2022) (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020)); *see also Hope*, 536 U.S. at 745–46 (holding prison guards were not entitled to qualified immunity with respect to a claim that they handcuffed a prisoner to a post in the hot sun for hours with little access to water and bathroom breaks, which were "obvious[ly] cruel[]" acts that "should have provided" the guards with "some notice that their" behavior violated the Eighth Amendment). This Case presents no such extreme circumstances. Given the volatile and potentially dangerous scene in the

---

[5] As with his argument at the constitutional violation prong, Odom merely recites the applicable standard for the clearly established right prong and concludes that Boisvert is not entitled to qualified immunity under the standard without application to the facts of this Case. Odom's lack of meaningful analysis is neither helpful nor persuasive.

restaurant, the limited use of the taser, and the seemingly de minimis injuries to Odom, Boisvert's conduct was not "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1292.  Therefore, no genuine dispute of fact remains as to Odom's § 1983 unlawful use of force claim, and summary judgment is due to be GRANTED on this claim.

## B.    Remaining State Law Claims

Having disposed of Odom's federal claims, the Court declines to exercise supplemental jurisdiction over Odom's remaining state-law claims.  Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004). Before doing so, the Court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540.  In this case, there are state-law immunity issues raised, which are best resolved by the state courts.  Further, there is nothing before the Court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction over claims arising under state law.  Moreover, the Court can discern no significant prejudice to any party, particularly considering 28 U.S.C. § 1367(d)'s provision tolling the

statute of limitations on any of the state-law claims.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state-law claims pursuant to § 1367(c)(3).

## VI. CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' Motion for Summary Judgment (doc. 51) is GRANTED as to Counts I and II in favor of Boisvert.  These claims are DISMISSED with prejudice.  It is further

ORDERED that the Court DECLINES to exercise supplemental jurisdiction over the remaining state-law claims in this case (Counts III, IV, V, and VI) pursuant to 28 U.S.C. § 1367(c), and these claims are DISMISSED without prejudice.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 15th day of March, 2023.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

16